PETERSON, Judge.
Bodon Industries, Inc. (buyer), appeals an award to Exceltech, Inc., formerly known as Williams Steel Industries, Inc. (seller), of one-half of a broker’s commission paid by the seller to two real estate brokers who procured the sale of a concrete plant between the parties. We reverse.
S.W. Williams and John D. Brown were president and vice-president of the seller. In 1978, the seller purchased a parcel of real property located in Ocoee, Florida, upon which the seller subsequently operated a concrete plant. In 1983 Williams and Brown contacted D.S.J. Realty, Inc. (DSJ), to discuss the possibility of selling the property.
The buyer was an out-of-state corporation whose president was Donald R. Faust. Faust operated a number of concrete plants and was interested in acquiring a Florida plant. Thomas J. Deserable, a resident of Texas and an experienced operator of concrete plants, learned of the buyer’s desire to acquire a Florida plant. He offered to assist in finding such a plant because he was interested in moving from his then-employer. He expected no compensation except reimbursement of travel expenses, although he was obviously interested in a job at an acquired plant. The buyer asked Deserable to begin a search.
Among other efforts, Deserable asked his sister-in-law, Regina Scott, a real estate broker and president of Sun World Realty, Inc. (Sun World), if she was aware of a suitable site. She, in turn, contacted DSJ, who informed her of the availability of the seller’s plant and who agreed to share equally its broker’s commission if a sale took place. Scott then showed the plant to Deserable. On January 10, 1984, Scott sent a letter to DSJ informing it that the plant had been shown and that information regarding the plant had been supplied to Deserable, Faust and another person evidently not related to the parties to this action. Williams acknowledges that he received a copy of the letter.
Williams signed a commission agreement, dated January 25, 1984, which provided for a $50,000 commission. The agreement identified the buyer as Robert Curtis and Associates (a nominee of the buyer) and provided that “this fee becomes a part of the contract between DSJ Realty Co. and Sun World Realty (50/50 split — ).” However, negotiations between the seller and the buyer were not successful and the buyer purchased an unrelated parcel of property in Sarasota.
*35 In August 1984 negotiations resumed between the seller and the buyer, initially without the knowledge of the brokers, and a sale was completed on September 7, 1984, for $1,000,000. The brokers suspected a pending sale no later than August 17, 1984, when Sun World’s attorney directed a letter of inquiry to DSJ demanding its share of any commission earned by the latter. DSJ responded by indicating that it had contacted both Williams and Scott, and Williams had assured it that Williams would “live up to the Commission Agreement.” On September 5, 1984, DSJ forwarded a letter and a copy of all the correspondence concerning the suspected sale to Williams. A copy of this letter entered into evidence contained a stamp of the seller bearing the date September 7, 1984.
When the brokers’ efforts to collect a commission were ignored or refused, Sun World filed a multi-count complaint against the seller, the buyer, and Williams and Brown individually. DSJ later joined as a co-plaintiff. The complaint alleged a commission due from the seller on the January 10, 1984 agreement to pay a $50,000 commission, or in the alternative, a commission based upon quantum meruit because the brokers were the procuring cause of sale. Other counts alleged that the buyer tortiously interfered with the business relationship between the brokers and seller and that all the defendants had conspired to defraud the brokers of a commission. A jury found the seller liable on the quantum meruit count and awarded the brokers a $100,000 commission to be shared by the brokers. The jury’s award was affirmed by this court in Sun World Realty, Inc. v. S.W. Williams, 524 So.2d 1169 (Fla. 5th DCA 1988).
The instant appeal arises from a later suit initiated by the seller against the buyer. The seller alleged that it was entitled to indemnification for the $100,000 that it was obliged to pay as a result of the first suit. The indemnification action was based upon the following language contained in the contract for sale and purchase between the parties:
Paragraph 15. Buyer represents that no real estate agent, broker or salesman has assisted the buyer in the purchase of the aforesaid property, and buyer agrees to save harmless the seller from any claim by any party asserted for a real estate commission, finder’s fee or other compensation resulting from any action taken by buyer.
The seller argues that Sun World assisted the buyer in the purchase of the property because the buyer’s agent contacted Sun World’s broker, Regina Scott, to request assistance in purchasing the property. The seller further argues that Deserable, Scott’s brother-in-law, was the agent who acted for the seller and that it was Deserable’s initial contact with Scott that constituted an action by the buyer that activated the indemnity provision of paragraph 15.
We agree with the buyer that the commission resulted not from any action taken by it, but from the action taken by the seller, for whom the brokers were acting. It was the seller who first made contact with the broker, DSJ, to advise that the concrete plant was for sale, thereby soliciting offers by prospective buyers through the broker, DSJ. At that point, if DSJ became a procuring cause of sale, it, and it only, would be entitled to a commission. When Sun World contacted DSJ because it had a buyer that was interested in the purchase of a concrete plant, Sun World had no claim for any compensation against anyone. The buyer had not contracted with Sun World to pay it any compensation. Sun World knew, as has been customary in the real estate industry, that it would have to look to the proceeds of the sale, the seller’s proceeds, to gain compensation. The seller was also not obligated to Sun World at that time since Sun World had never spoken with any of the seller’s principals. However, when Sun World contacted DSJ, the two brokers agreed to split the commission between the “listing broker,” DSJ, who provided the listing, and Sun World, the “selling broker,” who obtained an offer from a buyer pursuant to the seller’s solicitation for an offer. Only one commission was involved, the commission due from the seller to the listing broker, who in turn agreed to share that one commission. The seller’s financial exposure for a commission had not increased by the brokers’ agreement *36 whether DSJ was both the listing and selling broker or whether DSJ and another broker cooperated in the sale.
When the brokers brought suit upon completion of the sale between seller and buyer alleging that they were the procuring cause of sale, only one commission was sought, a commission to be shared by the listing and selling brokers. Notably, Sun World did not seek a commission from the buyer for any action alleged by seller to involve the brokers in the successful sale. On the contrary, the brokers’ only allegation against the buyer was that the buyer tortiously interfered with the brokers’ efforts to obtain a commission from the seller. It was the seller’s resistance to the brokers’ claim that the original $50,000 agreement was still viable that allowed the jury to base its award on quantum meruit. The $100,000 award was ten percent of the sales price, the customary commission whether one or multiple brokers are involved in a standard commercial transaction. The seller’s liability for $100,000 rather than $50,000 was not based upon the services of two brokers, but was based upon the seller’s rejection of the earlier $50,000 agreement.
The indemnity agreement of paragraph 15 of the contract between the seller and the buyer merely protected the seller against a surprise claim for a commission by a person unknown to the seller, or known by it, but without knowledge that the person would be seeking a commission from it. Here, only persons who were known by the seller made a claim against it and it could hardly have come as a surprise to the seller that DSJ and Sun World would make a claim when they were parties to a commission agreement with seller that had no expiration date and contemplated a sale to the buyer. The buyer’s only action that led to the claim for a commission against seller was the act of purchasing seller’s property. Seller does not contend that the buyer’s act of purchasing imposed a liability on buyer nor that the buyer would pay any brokers’ commission resulting in the sale. Paragraph 15 surely would have been drafted by the seller more clearly had that been the intent. An indemnity provision must be construed strictly in favor of the indemnitor when such provision is not given by one in the insurance business but is given as an incident to a contract, the main purpose of which is not indemnification. Westinghouse Elec. Corp. v. Prudential Ins. Co. of America, 547 So.2d 721, 722 (Fla. 1st DCA 1989).
The judgment against Bodon Industries, Inc., is vacated.
REVERSED.
W. SHARP and GOSHORN, JJ., concur.